UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CALVIN PAGE,

        Plaintiff,

v.                                                                    Case No:
                                                                      Judge:
ZIMMER, INC., a Delaware corporation;
ZIMMER HOLDINGS, INC., a Delaware
corporation; and ZIMMER US, INC.,
a Delaware corporation,

        Defendants.

_____

MONICA C. VAUGHAN  (Texas Bar No. 00794784)
Houssiere, Durant & Houssiere, L.L.P.
Attorneys for Plaintiff
1990 Post Oak Blvd., Suite 800
Houston, TX    77056
(713)  626-3700 / (713)  626-3709
mvaughan@hdhtex.com

ROBERT H. DARLING (P25523)
SOMMERS SCHWARTZ, P.C.
Local Counsel for Plaintiff
2000 Town Center, Suite 900
Southfield, MI  48075-1100
(248) 355-0300 / (248) 936-2125 (Fax)
rdarling@sommerspc.com

_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

      NOW COMES CALVIN PAGE, Plaintiff herein, by and through his attorneys, Sommers

Schwartz, P.C., and for his Complaint against the Defendants, ZIMMER, INC., a Delaware

corporation; ZIMMER HOLDINGS, INC., a Delaware corporation; and ZIMMER US, INC., a

Delaware corporation; and hereby states as follows:

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

**Parties**

1.     Plaintiff Calvin Page (hereinafter "Plaintiff") is, and at all times material hereto was, an individual residing in Saginaw, Saginaw County, Michigan.  Plaintiff is, and at all times material hereto was, a citizen of Michigan.

2.     Defendant Zimmer, Inc. (hereinafter "Zimmer") is, and at all times material hereto was, a corporation organized under the laws of the state of Delaware, doing business in the state of Michigan, registered to do business in Michigan, with its principal place of business in Indiana; and may be served with process by serving its registered agent for service,   Peter   L. Zimmer, at 1898 Allenway Ct., Rochester Hills, Michigan 48309-3313.   Thus, Zimmer is a citizen of the states of Delaware and Indiana.

3.     Defendant Zimmer Holdings, Inc. (hereinafter "Zimmer Holdings") is, and at all times material hereto was, a corporation organized under the laws of the state of Delaware, doing business in the State of Michigan, not registered to do business in Michigan; with its principal place of business in Indiana; and may be served with process by serving its CEO, David Dvorak, at 345 East Main Street, Warsaw, Indiana 46580.  Thus, Zimmer Holdings is a citizen of the states of Delaware and Indiana.

4.     Defendant Zimmer US, Inc. (hereinafter "Zimmer US") is, and at all times material hereto was, a corporation organized under the laws of the state of Delaware, doing business in Michigan, registered to do business in Michigan, with its principal place of business in Indiana; and may be served with process by serving its registered agent for service, CSC-Lawyers Incorporating Service (Company), at 601 Abbot Rd., East Lansing, Michigan 48823-3366. Thus, Zimmer US is a citizen of the states of Delaware and Indiana.

5.     Zimmer, Zimmer Holdings and Zimmer US shall hereinafter, jointly and severally, be referred to as Zimmer, Defendant, or Defendants.

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

## Jurisdiction

The amount in controversy is in excess of $75,000.00, exclusive of interest, costs and attorney's fees and this Court has diversity jurisdiction over the case at bar.  28 U.S.C. § 1332(a)(1).

## Venue

This Court has venue of the case at bar because a substantial part of the events, omissions, or both, giving rise to Plaintiff's causes of action occurred in the judicial district encompassed by the Eastern District of Michigan.  28 U.S.C. § 1391.

## Statement of Facts Applicable to All Counts

1.      On March 1, 2005, Plaintiff a core decompression of his left hip for avascular necrosis in Caro Community Hospital.

2.      On August 23, 2006, Gregory Pinnell, M.D. performed a total left hip arthroplasty in Marlette Regional Hospital in Marlette, Michigan.   Plaintiff believes the hip implant components implanted during such surgery are identified as follows:

Lot 60248867
Zimmer anatomic hip prosthesis
W/TI Nidium surface hardening process
Femoral stem  porous
Left 14 mm dia.    144 mm stem length
Tivanium TI-6AL- 4V alloy

Zimmer
Lot 60441397    Cat. No. 60250-65-15
Bone Screw     Self-Tapping
6.5 mm dia.    15 mm length
Tivanium TI-6AL- 4V alloy

Lot 60447706
EDI: 00620206022
Ref 6202–60–22
Shell with cluster holes porous
Trabecular Metal Modular Acetabular System
60mm

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

Lot 60100431
Trilogy Acetabular System
Longevity Crosslinked Polyethylene Liner
10 degree elevated rim
32 mm I.D.
For use with 60mm O.D. Shell

Lot 60476817
EDI: 00902603325
Ref 9026-32-35
Zimmer Femoral Head
6 degree taper
32mm dia
Short plus
3.5 mm neck length

3.      On or about September 8, 2006, Plaintiff felt a "snap" sensation while doing routine physical therapy and suffered immediate pain.

4.      On September 9, 2006, Plaintiff underwent open reduction internal fixation of a fracture left femur in Marlette Regional Hospital.   During that surgery, Plaintiff received the following:

Lot 77141400
Ref 2232-02-06
2010-10
Extended 4 hole GTR w/4 cables
Titanium Alloy/Cobalt Chrome Alloy/Titanium
Manufactured by Pioneer Surgical Technology
Distributed by Zimmer

Zimmer
Lot 60244943
Cat. No. 5250-45-3
Nexgen Complete Knee Solution
Osteotomy System     Bone Screw
4.5mm diameter     36mm length
Tivanium TI-6AL-4V alloy

5.      X-rays of Plaintiff's left hip taken on December 18, 2006 at Marlette Community Hospital were interpreted as showing that the acetabular, femoral head, and intramedullary segments of the prosthesis appeared to be well aligned.

6.     X-rays taken on February 23, 2007 were interpreted as showing no sign of additional fracture or any problems around the hip.

7.     As of April 27, 2007, Plaintiff was suffering from popping and pain in his hip.  X-rays taken on or about May 7, 2007 were interpreted as showing that the plate, wires and screws, as well as the prosthesis were all intact.

8.     X-rays taken on or about August 22, 2007 were interpreted as showing that the components appeared well seated and well aligned, with no evidence of infection or loosening.

9.     X-rays taken of Plaintiff's left hip taken on or about October 1, 2007 at Marlette Community Hospital were interpreted as showing that the acetabular femoral head and intramedullary segments of the prosthesis remain well aligned.

10.     Lawrence D. Holen, D.O. examined Plaintiff on October 1, 2007 and saw no sign of  loosening, fracture, infection, or other complicating process.

11.     On November 14, 2007, Plaintiff continued to suffer hip pain.  Dr. Pinnell examined Plaintiff on that day and opined that the appliance appeared well seated.

12.     X-ray of Plaintiff's pelvis taken on January 11, 2008 at Covenant Healthcare was interpreted as showing excellent anatomic positioning; no signs of fractures, dislocations or subluxation; and indeterminate degree of lucency around the intramedullary rod.

13.     Scan taken on or about January 30, 2008 was interpreted as showing loosening of prosthesis.

14.     X-ray taken of Plaintiff's left hip taken on or about February 14, 2008 at Marlette Community Hospital was interpreted as showing that the acetabular femoral head and intramedullary segments of the prosthesis were well aligned; and as showing excellent anatomic positioning and mild lucency around the intramedullary portion.  Subsequent nuclear scan with technetium was interpreted as showing possible residual healing or possible

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

prosthetic loosening or developing stress fracture; and that if there was loosening, it was minimal.

15.     Radiographs taken at Saginaw Valley Bone & Joint Center on or about July 2, 2008 were interpreted as showing significant lucency about the femoral stem consistent with a stem bone interface loosening.

16.     On August 4, 2008, bone scan was interpreted as showing evidence of a loose femoral stem.

17.     On or about October 23, 2008, at Covenant Healthcare, Plaintiff underwent a revision of total left hip replacement with revision of femoral stem and femoral head, as well as removal of 2 screws through the patient's previous fixation plate. Inspection of the femoral head demonstrated it to be profoundly loose.  Plaintiff believes that the new components he received during that surgery can be identified as a Stryker revision hip system using a 195 bowed stem which was 18mm in width, used a 21 standard body, used a +4, 32 head.

<u>**Count I**</u>

1.     Plaintiff adopts by reference each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

2.     The components of the hip implant contained a manufacturing, design or marketing defect, more particularly set forth below.

*<u>Manufacturing Defect – Production Defect.  MCL 600.2946 et seq.</u>*

3.     The components of the hip implant may have contained a manufacturing defect.

4.     The components of the hip implant may have deviated, in its construction or quality, from the specifications or planned output.

5.     As more particularly set forth below, Plaintiff invokes the doctrine of res ipsa loquitur as to whether the components of the hip implant contained a manufacturing defect.

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

_Marketing Defect – Production Defect.  MCL 600.2946 et seq._

7. The components of the hip implant contained one or more marketing defects:

(a) there was an inherent risk in the intended or reasonably foreseeable use of the components of loosening of the femoral stem;

(b) there were inadequate warnings in that, among other things:

(1) the warnings were not placed in a location to reasonably be expected to catch the attention of the user (surgeon);

(2) the warnings failed to inform the user (surgeon) of the nature of the dangers, including the propensity for loosening of the femoral stem;

(c) Defendant knew or reasonably foresaw (or should have known or reasonably foreseen) the above risks.

(d) Defendant failed to warn the surgeon (or to adequately warn the surgeon of the above risk), failed to instruct the surgeon (or failed to adequately instruct the surgeon) how to safely use the components of the hip implant, or both.

8. Among other things, Defendant should have truthfully represented that there was a propensity of loosening of the femoral stem.

_Design Defects – Production Defect.  MCL 600.2946 et seq._

9. The components of the hip implant contained one or more of the following design defects:

(a) the femoral stem had a propensity for loosening.

10. One or more of the following safer alternative designs for the components of the hip implant existed that would have prevented or significantly reduced the risk of Plaintiff's injury without substantially impairing the product's utility, and that was economically and technologically feasible at the time the components of the hip implant left Defendant's control by the application of existing or reasonably achievable scientific knowledge:

(a) a design that did not result in a propensity for loosening of the femoral stem.

11.     The manufacturing and marketing defects, jointly and severally, rendered the components of the hip implant unreasonably dangerous by making them dangerous to an extent beyond that which would be contemplated by the ordinary consumer with the knowledge common to the community as to its characteristics.   There were feasible alternatives to eliminate and/or reduce the risk of injury.

12.     The design defect or defects rendered the components of the hip implant unreasonably dangerous as designed considering their utility and the risks involved in their use.  There were feasible alternatives to eliminate and/or reduce the risk of injury.

13.     The above defects, or any of them, were jointly and severally a proximate cause of Plaintiff's injuries and damages, more particularly set forth below.

### Count II

1.     Plaintiff adopts by reference each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

2.     Defendant owed Plaintiff a duty to exercise care to discover dangerous propensities of the components of the hip implant.   Defendant also owed Plaintiff a duty to exercise ordinary care in the design, production (manufacture) and sale (marketing) of the components of the hip implant.

3.     Defendant breached the duties it owed to Plaintiff, failed to exercise ordinary care, and was negligent in the following particulars, among others:

(a)     the product was negligently manufactured, as more particularly set forth above;

(b)     the product was negligently designed in the following particulars, among others:

(a)     there was a propensity for loosening of the femoral stem.

(c)     there were inadequate warnings in that, among other things:

8

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

      (1)     the warnings were not placed in a location to reasonably be expected to catch the attention of the user (surgeon);

      (2)     the warnings failed to inform the user (surgeon) of the nature of the dangers, including lack of bony ingrowth;

(d)     failing to place a warning where it could reasonably be expected to catch the attention of the user(surgeon);

(e)     failing to instruct surgeons how to safely use the components of the hip implant;

(f)     As more particularly set forth below, Plaintiff invokes the doctrine of res ipsa loquitur.

4.     Each and every one of the foregoing acts or omissions, taken singularly or in any combination, proximately caused Plaintiff's injuries and damages, more particularly set forth below.

## Count III

1.     Plaintiff adopts by reference each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

2.     The character of the incident made the basis of this lawsuit was such that it would not ordinarily occur without negligence; and

3.     The components of the hip implant were under the management and control of Defendant.  Defendant was in control of the components of the hip implant at the time that the negligence (inferable from the incident made the basis of this lawsuit) occurred, so that the reasonable probabilities point to the Defendant and support a reasonable inference that Defendant was the negligent party.

4.     Defendant has superior knowledge or means of information to determine the cause of the incident made the basis of this lawsuit.

5.     By reason of the above and foregoing circumstances, among others, the jury is permitted to infer Defendant's negligence.

**Damages Applicable to All Counts**

1.      Plaintiff hereby adopts and realleges each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

2.      Plaintiff hereby adopts and realleges each and every paragraph of each and every Count of this Petition as if fully copied and set forth at length herein.

3.      As a direct and proximate result of the defective product, wrongful acts, negligence and/or carelessness of Defendants, Plaintiff sustained the following compensable damages, and in reasonable medical probability, will continue to sustain in the future the following injuries and damages:

      (a)      Physical pain;

      (b)      mental anguish;

      (c)      physical disability;

      (d)      reasonable and necessary medical expenses;

      (e)      loss of earnings and/or loss of earning capacity.

4.      Plaintiff requests a jury trial.

WHEREFORE, Plaintiffs pray that Defendants be cited to appear and answer herein, and that upon trial, Plaintiffs have, among other things:

      (a)      judgment against Defendant for compensatory damages, jointly and severally, in excess of the minimum jurisdictional limits of the Court;

      (b)      judgment against Defendant for punitive and exemplary damages in excess of the minimum jurisdictional limits of the Court;

      (c)      pre-judgment interest in accordance with the laws of California;

      (d)      post-judgment interest in accordance with the laws of New York;

      (e)      costs of court; and

      (f)      such other and further relief to which Plaintiffs may be justly entitled to receive.

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

## DEMAND FOR TRIAL BY JURY

Demand for trial by jury is hereby made for each and every allegation and count contained within this Complaint.

Respectfully submitted,


By:   s/MONICA C. VAUGHAN
Houssiere, Durant & Houssiere, L.L.P.
(Texas Bar No. 00794784)
Attorneys for Plaintiff
1990 Post Oak Blvd., Suite 800
Houston, TX    77056
(713)  626-3700 / (713)  626-3709
mvaughan@hdhtex.com



By:   s/ROBERT H. DARLING (P25523)
Sommers Schwartz, P.C.
Attorney for Plaintiff
2000 Town Center, Suite 900
Southfield, Michigan 48075
(248)355-0300
rdarling@sommerspc.com

Dated:  January 7, 2011

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300